***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter of this case.
2. Liberty Mutual is the carrier on the risk.
3. Plaintiff sustained a compensable work injury on August 13, 2007, to his left knee, which developed into complex regional pain syndrome.
4. Defendants accepted the compensability of plaintiff's injury on a Form 60 filed with the Commission on October 5, 2009.
5. Plaintiff's average weekly wage was $815.35, yielding a compensation rate of $543.55.
6. Plaintiff continues to receive ongoing medical and indemnity benefits.
7. The issues before the Industrial Commission are what additional benefits, including attendant care, is plaintiff entitled to receive under the North Carolina Workers' Compensation Act and whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
7. The following exhibits were admitted into evidence:
 a. Stipulated Exhibit #1: Industrial Commission forms.
 b. Stipulated Exhibit #2: Discovery responses.
 c. Stipulated Exhibit #3: Discovery responses.
 d. Stipulated Exhibit #4: GENEX records and Industrial Commission Nurses Section records. *Page 3 
 e. Stipulated Exhibit #5: Medical records (on CD).
 f. Plaintiff's Exhibit #1: Additional Authority (submitted post-hearing by Motion, allowed on November 23, 2009).
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff has a high school diploma. Plaintiff was employed by defendant-employer for approximately 18 years. Plaintiff sustained a compensable left knee injury on August 13, 2007, while working as a fast food restaurant manager for defendant-employer.
2. On September 25, 2007, Dr. Angus Graham of Brevard Orthopedics performed a left knee arthroscopy with a partial medial meniscectomy on plaintiff's left knee at Transylvania Community Hospital as a result of the incident giving rise to this claim on August 13, 2007.
3. Plaintiff did not improve following his surgery and Dr. Graham became concerned that he was developing reflex sympathetic dystrophy (RSD), also known as chronic regional pain syndrome (CRPS). As a result, Dr. Graham referred plaintiff to Dr. Eugene Mironer, a pain management specialist with Carolina Center for Advanced Management of Pain.
4. On January 7, 2008, plaintiff presented to Dr. Mironer. Dr. Mironer performed a lumbar sympathetic block that was not successful. Plaintiff returned to Dr. Graham on January 14, 2008, at which time Dr. Graham again recommended that he be seen by a pain management specialist. Dr. Mironer referred plaintiff to Dr. Laura Fleck, a pain management physician, for his deteriorating condition of CRPS. *Page 4 
5. On January 18, 2008, plaintiff presented to his family physician, Dr. John Stringfield. Dr. Stringfield diagnosed plaintiff with RSD and depression and recommended that plaintiff present to a pain management specialist and a psychiatrist.
6. On February 12, 2008, plaintiff presented to Dr. Fleck, who performed a nerve conduction study that was determined "unremarkable."
7. On April 8, 2008, plaintiff returned to Dr. Mironer. Plaintiff presented to nurse practitioner Monica Speak. It was noted that plaintiff was ambulating with "an assistive device." A regimen of medications was begun and plaintiff was referred to a psychiatrist.
8. On June 9, 2008, plaintiff presented to psychiatrist, Dr. Kenneth Leetz. Dr. Leetz opined and the Full Commission finds that plaintiff's depression was directly related to the injury by accident and resulting RSD. Dr. Leetz agreed to take over plaintiff's psychiatric medications, but opined that it would be "unlikely that his mood will much improve until his pain is under better control."
8. On June 20, 2008, plaintiff returned to Dr. Mironer. The medical notes from this visit indicate that plaintiff "is now using a walker." Plaintiff's medications were adjusted and continued. On August 14, 2008, Dr. Mironer's notes indicated that a trial spinal cord stimulator was approved by defendant-carrier. Dr. Mironer provided a prescription for the stimulator and again noted that plaintiff needed to use a walker and that "we will write an RX for this as well."
9. Defendants did not approve plaintiff's prescription for a walker. However, the medical records do indicate that plaintiff was using a walker.
10. On August 11, 2008 the trial spinal cord stimulator was implanted by Dr. Mironer. The trial was not successful and Dr. Mironer opined that plaintiff would be better *Page 5 
treated conservatively with medication as opposed to implanting a permanent stimulator. Thereafter, plaintiff's care was transferred to Dr. John Haasis in Dr. Mironer's office.
11. On December 18, 2008, plaintiff presented to Carla Norman, a physician's assistant in Dr. Mironer's office. Plaintiff requested a hospital bed. Ms. Norman referred plaintiff to his primary care physician to address "equipment needs and attendant care," as these were not issues with which the pain management clinic normally dealt. That same day plaintiff went to Dr. Stringfield, who prescribed both a hospital bed and a motorized wheelchair. Dr. Stringfield prescribed a mobility scooter on April 21, 2008.
12. Defendants have not authorized the hospital bed, mobility scooter or motorized wheelchair. It appears from the record that plaintiff has obtained the bed and a motorized scooter on his own.
13. On February 13, 2009, Judy Clouse, a nurse consultant with the North Carolina Industrial Commission, was assigned to this case. On March 9, 2009, Ms. Clouse recommended that defendants provide: (1) 10 sessions with a psychologist, Dr. Sims, who practices with Dr. Leetz, and as recommended by Dr. Leetz; (2) an evaluation with CarePartners Seating Clinic regarding an appropriate wheelchair; (3) noting that Dr. Haasis specializes in interventional procedures, an evaluation with physiatrist Dr. Margaret Burke who specializes in rehabilitation; and (4) eight hours of Certified Nursing Assistant (CNA) attendant care, Monday through Friday, so that plaintiff's wife might return to work or otherwise to pay for the attendant care services she has provided to plaintiff.
14. Defendants have allowed the psychotherapy with Dr. Sims, an evaluation with CarePartners Seating Clinic regarding an appropriate wheelchair, and an evaluation with Dr. Margaret *Page 6 
Burke. Defendants have not authorized the attendant care recommended by Ms. Clouse or the motorized wheelchair recommended by CarePartners Seating Clinic.
15. On April 20, 2009, Dr. Burke declined the referral because of plaintiff's extremely limited rehabilitation potential. Instead, she felt that plaintiff's equipment prescription and medical management should be provided by Dr. Stringfield. Defendants have refused to authorize any recommendations or prescriptions by Dr. Stringfield.
16. CarePartners Seating Clinic recommended a power wheelchair on April 30, 2009, along with a manual wheelchair for backup purposes. Defendants have not authorized a power wheelchair or a manual wheelchair.
17. Nurse consultant Clouse in a report filed May 22, 2009, recommended that the carrier authorize payment for a power wheelchair to allow plaintiff to change positions and to elevate his lower extremities to decrease his pain, and with a seat elevator for increased independence with transfers. Because the doorways in plaintiff's mobile home are too narrow, the doors would have to be widened to accommodate the wheelchair. Ms. Clouse also recommended that defendants authorize an evaluation by a RSD/CRPS specialist, the rental or purchase of a standard hospital bed with side rails, and payment for eight hours of attendant care for plaintiff, 5 days a week. Ms. Clouse recommended that the carrier authorize Dr. Stringfield to provide pain management and rehabilitation needs. She stated that Dr. Stringfield is board-certified in family medicine and has been plaintiff's primary care physician prior to and following the accident.
18. On June 5, 2009, Dr. Stringfield recommended 16 hours of attendant care services retroactive to the date of diagnosis of RSD by Dr. Graham on November 15, 2007. *Page 7 
19. Following Ms. Clouse's recommendation, on July 1, 2009, plaintiff presented to Dr. James North, co-director of the pain management section of Wake Forest Baptist Hospital in Winston-Salem, for his recommendations as to treatment options. Dr. North has agreed to treat plaintiff and recommended a trial of lumbar sympathetic blocks, intrathecal medications including Prialt, and intravenous Ketamine. The application of these medicines require hospital stays of at least a week so that plaintiff could be observed during the medication procedure.
20. Although plaintiff and his wife have expressed a desire to treat with Dr. North, he is located approximately four and one half hours from plaintiff's home. Because of the significant distance from plaintiff's home to Dr. North's office and the anticipated difficulty in driving that distance, plaintiff declined further treatment with Dr. North. Defendant-carrier has offered to pay for a hotel stay to allow trips to Dr. North to be divided into two days and to provide transportation to and from Dr. North to plaintiff's home.
21. The Full Commission finds that it is in plaintiff's best interests to have Dr. North assigned as one of his authorized treating physicians. The distance from plaintiff's home may be addressed by a recommendation by Dr. North for a local physician to co-treat plaintiff in accordance with Dr. North's instructions, and by defendants providing transportation to and from Dr. North's practice, along with reasonable hotel accommodations when necessary.
22. Dr. North opined that providing plaintiff with a power wheelchair was counterproductive to his recovery. He noted that people using wheelchairs tend to gain weight and avoid using the extremity that causes their pain, both of which impedes the recovery process. Dr. North noted that the less an injured extremity is used, the worse the condition will become. He further opined that there was no scientific or medical basis for requiring a hospital bed for patients with RSD. *Page 8 
23. Dr. Mironer's opinions regarding plaintiff's need for or the desirability of the power wheelchair and hospital bed essentially coincide with those of Dr. North.
24. Plaintiff currently lives in a relatively narrow single wide trailer. Because the doorways are also narrow, he must turn sideways to use a walker to get through them. The doors are too narrow for a wheelchair. The home has been equipped by plaintiff's church members with ramps for egress from the outside and from room to room. James Holtvedt is a rehabilitation specialist with a particular expertise in home modifications. He is of the opinion that plaintiff's home cannot be modified to accommodate a wheelchair and recommends that a double-wide, handicap accessible mobile home be purchased for plaintiff.
25. The Full Commission gives greater weight to Dr. Stringfield, plaintiff's primary care physician, regarding the need for a hospital bed, mobility scooter and power wheelchair, as plaintiff was referred by other medical providers to his primary care physician to address these issues. Therefore, the Full Commission finds as fact that the hospital bed and mobility scooter are equipment reasonably required at this time to effect a cure for plaintiff's condition, give relief or to lessen his period of disability. The power wheelchair is not approved at this time because plaintiff's home cannot accommodate the wheelchair.
26. The Full Commission finds that plaintiff is not entitled to have defendants purchase a new home for him. Plaintiff is entitled to home modifications that would allow him mobility and accessibility within his current residence. Alternatively, plaintiff and defendants may agree on other suitable handicap accessible housing alternatives.
27. Bruce Holt is a certified life care planner. Mr. Holt performed an evaluation and has opined that plaintiff needs attendant care for at least 16 hours per day, seven days a week. Evidence has been presented and the Full Commission finds that the prevailing market rate in *Page 9 
plaintiff's geographical location for CNA attendant care is $17.50 to $21.00 per hour. Mr. Holt also recommended a manual wheelchair as back up. The Full Commission finds plaintiff is entitled to a manual wheelchair if renovations to his home are sufficient to allow the use of a wheelchair.
28. While she continued to work as a dental assistant, plaintiff's wife provided some attendant care to plaintiff from November 15, 2007 until August 14, 2008. She stopped working on approximately August 15, 2008, because she could no longer perform both her work as a dental assistant and provide care for plaintiff. Ms. Mahaffey has been providing care to plaintiff at all times since she stopped work with the exception of brief trips to the convenience store when her children were at home to care for plaintiff. Plaintiff's wife is not trained as a CNA.
29. Ms. Mahaffey, plaintiff's wife, stated that plaintiff cannot walk unassisted and usually uses his walker or scooter. Ms. Mahaffey helps plaintiff out of bed in the morning, gives him a sponge bath, and assists in dressing. She helps him get onto the scooter and transfer from the scooter to a recliner, where plaintiff sits most of the day. Ms. Mahaffey prepares all plaintiff's meals. She assists with his toileting, including bringing him a urinal and cleansing it or helping him on and off the toilet. At night Ms. Mahaffey helps plaintiff dress for bed and helps him into bed.
30. The recommendations for attendant care vary from 8 to 16 hours per day. While Ms. Mahaffey was working outside the home, the Full Commission finds plaintiff was in need of and received attendant care services provided by his wife for an average of 4 hours per day beginning November 15, 2007 through August 15, 2008. Thereafter, the Commission finds that plaintiff requires attendant care an average of 16 hours per day. Ms. Mahaffey is the most appropriate person to provide said care, but in the event that Ms. Mahaffey desires to return to *Page 10 
her dental assistant position, the services of a CNA should be retained for 8 hours of the day, with Ms. Mahaffey providing the remaining 8 hours of care.
31. Taking into account the rate charged by professional home health care agencies and the fact that Ms. Mahaffey is not a professional and is an unskilled care provider without any business overhead, a fair rate of pay for Ms. Mahaffey's attendant care services is $12.50 an hour.
32. Plaintiff's wife can currently only transport plaintiff's scooter if it is not raining, as they currently strap the scooter to the back of the vehicle. The Full Commission finds that due to plaintiff's level of disability, he is entitled to vehicle modifications which would provide handicap accessibility for him to travel, taking a wheelchair or scooter, despite the weather conditions. Alternatively, defendants may provide handicap accessible transportation for plaintiff to his medical appointments and for other authorized purposes.
33. Defendants' refusal to provide any attendant care or payment of attendant care, though recommended by multiple care providers, along with defendants' refusal to provide plaintiff with a wheelchair, scooter or walker as prescribed, was unreasonable and indicative of stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff is entitled to compensation for attendant care services provided by his wife for 4 hours per day, seven days a week, beginning November 15, 2007 through August 14, 2008 at the rate of $12.50 per hour. Beginning August 15, 2008, plaintiff is entitled to 16 hours *Page 11 
per day of attendant care through the present and continuing at the rate of $12.50 per hour, seven days per week. N.C. Gen. Stat. §§ 97-2(19), 97-25.
2. Plaintiff is entitled to up to eight hours per day of care provided by a CNA. Any hours provided by a CNA shall be subtracted from the 16 hours per day of pay allotted to plaintiff's wife. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Dr. North or his designee is hereby approved as plaintiff's authorized treating physician for pain management. Plaintiff is entitled to have defendants arrange for and pay for transportation and reasonable accommodations to facilitate Dr. North's treatment of plaintiff.
4. Plaintiff is entitled to have defendants pay for a hospital bed and a mobility scooter as recommended by his primary care physician, both of which will tend to effect a cure, provide relief or lessen his period of disability. Plaintiff is entitled to a replacement walker at defendants' expense upon request. N.C. Gen. Stat. §§ 97-2(19), 97-25. At this time plaintiff is not entitled to a wheelchair, but after handicap access housing is provided, defendants shall pay for a power wheelchair and a backup manual wheelchair.
5. Plaintiff is entitled to have renovations made to allow him accessibility within his own home or he may choose to make other living arrangements, which would provide him adequate accessibility. Plaintiff is also entitled to vehicle modifications which would provide handicap accessibility for him to travel, taking a wheelchair or scooter, despite the weather conditions. Alternatively, defendants may provide handicap accessible transportation for plaintiff to his medical appointments and for other authorized purposes. Both parties shall confer and reach an agreement as to how these handicap accessible modifications shall be made.
6. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure *Page 12 
or lessen the period of disability, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19). The reasonable medical expenses include, but are not limited to, treatment for his depression and by Dr. Stringfield, who is approved as one of plaintiff's authorized treating physicians.
7. Because defendants' defense of this matter was unreasonable, and indicative of stubborn, unfounded litigiousness, plaintiff is entitled to sanctions in the form of attorney's fees for counsel for plaintiff pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees awarded below, defendants shall pay to plaintiff compensation for attendant care services rendered by his wife for 4 hours per day, seven days a week, beginning November 15, 2007 through August 14, 2008 at the rate of $12.50 per hour. Beginning August 15, 2008, plaintiff is entitled to payment by defendants for 16 hours per day of attendant care at the rate of $12.50 per hour, seven days per week, through the present and continuing until further Order of the Commission.
2. Upon request by plaintiff, Ms. Mehaffey's attendant care responsibilities may be lessened by the assistance of a CNA to be provided by defendants. Payment for the 16 hours of attendant care by plaintiff's wife shall be adjusted accordingly.
3. Defendants shall pay to modify plaintiff's vehicle and home to make them both handicap accessible or the parties can agree to other modifications and accommodations. *Page 13 
Defendants shall be responsible for payment of the difference between a standard vehicle and residence and any necessary accommodations.
4. Defendants shall pay a reasonable attorney's fee to plaintiff's counsel in the amount of 25% of all compensation awarded to plaintiff for past attendant care services provided. This amount shall be added as part of the cost of this matter and not deducted from the amount due plaintiff. In addition, counsel for plaintiff shall submit to the Full Commission an affidavit of an accounting of the work performed on plaintiff's behalf preparing for the hearings before the Deputy Commissioner and the Full Commission and a requested hourly rate so that an attorney's fee pursuant to can be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
5. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures, including providing transportation and accommodations as necessary to facilitate the treatment by Dr. North. The approved medical expenses include treatment by Dr. Stringfield, who is approved as an authorized treating physician.
6. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
7. Defendants shall pay the costs.
This 10th day of August, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 14 
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER